**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINA PUENTE, | ) | |
| Plaintiff | ) | Case No.: 1:25-cv-04570 |
| | ) | |
| v. | ) | |
| GARDAWORLD FEDERAL SERVICES, | ) | |
| LLC, | ) | |
| Defendant | ) | |

## DEFENDANT'S MOTION TO TRANSFER VENUE
## PURSUANT TO 28 U.S.C.S. § 1404(a)

NOW COMES Defendant, GARDAWORLD FEDERAL SERVICES, LLC., by and through its attorney, and respectfully requests this Court transfer venue from the U.S. District Court for the Northern District of Illinois to the U.S. District Court for the Eastern District of Virginia pursuant to 28 U.S.C.S. § 1404(a). In support of this request, Defendant states as follows:

## INTRODUCTION

On April 28, 2025, Plaintiff, CHRISTINA PUENTE ("Puente"), filed a Complaint against Defendant, GARDAWORLD FEDERAL SERVICES, LLC. ("GWFS"), in the U.S. District Court for the Northern District of Illinois ("N.D. of Illinois"). Puente alleges that while employed by GWFS in Illinois, she was wrongfully discriminated and retaliated against due to her sex. Count I seeks recovery under Title VII of the Civil Rights Act of 1964 for sex-based discrimination. Count II seeks recovery under Title VII of the Civil Rights Act of 1964 for retaliation. On May 29, 2025, GWFS responded to Puente's complaint denying both allegations. Defendant, now, requests that this Court transfer venue to the U.S. District Court for the Eastern District of Virginia ("E.D. of Virginia") pursuant to 28 U.S.C.S. § 1404(a) and the presence of a valid forum-selection clause.

## STATEMENT OF FACTS

From January 2024 to September 2024, Plaintiff was employed by GWFS and worked in Chicago, Illinois. Plaintiff's Complaint, ¶ 12, Attached hereto as <u>Exhibit A</u>. Plaintiff alleges that while employed by GWFS, she experienced sex-based discrimination throughout her employment, and ultimately retaliation when she was terminated in September 2024. *Id.* at ¶ 1. Plaintiff currently resides in Randall County, Texas. *Id.* at ¶ 8.

GWFS's headquarters is located at 1700 N. Moore Street, Suite 1875, Arlington, Virginia 22209. Contained within Plaintiff's contract with GWFS which she signed on January 2, 2024, was the following provision:

> Choice of Venue. Any action arising from this Agreement or any aspect of my employment or termination of my employment, including enforcement of an arbitrator's decision rendered pursuant to this Agreement, must be filed in the U.S. District Court for the Eastern District of Virginia or the Circuit Court of Fairfax County, Virginia. I expressly submit to the exercise of personal jurisdiction by such courts and waive any objections to venue in those courts. Notwithstanding the foregoing, if Employee works primarily in California, then this paragraph shall not apply.

GWFS Contract p.3, ¶ 12, Attached hereto as <u>Exhibit B</u>.

Notwithstanding this provision, Plaintiff filed suit in the N.D. of Illinois, a forum she does not reside in and is expressly excluded by the terms of her contract.

## ARGUMENT

When determining whether to transfer venue, a Court must weigh, "both the convenience of the parties and various public-interest considerations.". *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 (2013). When evaluating the parties' convenience, this Court should consider: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; (5) the convenience to the parties of litigating in the respective forums." *Sassy, Inc. v. Berry*, 406 F. Supp. 2d 874, 876 (N.D.

Ill. 2005) Concerning an evaluation of justice, there are several factors that must evaluate in either forum such as: (1) docket congestion; (2) familiarity of relevant law; and (3) resolving local controversies locally. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

"These considerations, however, will 'rarely' outweigh the parties' private interests in enforcing a forum-selection provision." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 708 (7th Cir. 2020). To be considered valid, the language contained within the provision should be mandatory or obligatory in nature displaying the parties' desire to make that venue exclusive. *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). When encountering a valid forum-selection provision, a Court should give no weight to Plaintiff's choice of forum and should otherwise disregard any arguments raised by Plaintiff relating to personal inconvenience or the inconvenience of witnesses. *Atl. Marine Constr. Co.*, 571 U.S. 49, 63-64 (2013) (emphasis added). In almost all situations, a valid forum-selection clause should be given controlling weight. *Id.* at 59-60.

## I.   THE CONTRACT'S FORUM-SELECTION CLAUSE SHOULD NOT BE DISTURBED

On January 2, 2024, Puente voluntarily signed her contract with GWFS. This contract clearly designates the E.D. of Virginia as the exclusive forum. Specifically, the contract states that, "**[a]ny** action arising from this Agreement or **any** aspect of my employment or termination of my employment, including enforcement of an arbitrator's decision rendered pursuant to this Agreement, **must** be filed in the U.S. District Court for the Eastern District of Virginia or the Circuit Court of Fairfax County, Virginia. I **expressly submit** to the exercise of personal jurisdiction by such courts and **waive any objections** to venue in those courts." Ex. B, p. 3, ¶ 12

(emphasis added). The language of this clause shows it is mandatory and obligatory. Therefore, the clause should be considered valid and enforceable.

The presence of a valid forum-selection clause within her contract should outweigh all other considerations regarding the convenience of Plaintiff and Plaintiff's witnesses. *Atl. Marine Constr. Co.*, 571 U.S. 49, 63-64 (2013). Following the Supreme Court, Defendant asks this Court to respect the valid forum-selection clause and transfer venue to the E.D. of Virginia.

## II.     PLAINTIFF CANNOT SHOW THAT PUBLIC INTEREST FACTORS OVERCOME THE FORUM SELECTION CLAUSE

Although not necessary to consider the public interest factors due to the validity of the forum-selection clause within the contract, these factors still weigh in favor of transfer to the E.D. of Virginia. Concerning docket congestion, the E.D. of Virginia is one of the fastest courts in the United States in terms of time elapsed from filing to trial. U.S. District Court – Judicial Caseload Profile, Attached hereto as Exhibit C. The Court averages 11.9 months from filing to trial in civil matters. *Id.* This can be compared to the 58.6 months it takes from filing to trial in the N.D. of Illinois. *Id.* While venue transfer is not a solution for docket congestion, the rapidity on display in the E.D. of Virginia is impressive and should weigh in favor of transfer.

Concerning either court's familiarity with the relevant law, both of Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964. Both the E.D. of Virginia and the N.D. of Illinois are federal courts and undoubtedly have expertise in federal laws like the Civil Rights Act of 1964. This factor is likely neutral, but the overwhelming weight of the valid forum-selection clause should control and direct this Court to transfer to the E.D. of Virginia.

Finally, while the alleged violations occurred in Chicago, Illinois, the N.D. of Illinois has no ongoing interest in this dispute – Plaintiff does not reside in Illinois, she resides in Texas, and GWFS does not currently do business in Illinois.  By contrast, the E.D. of Virginia has a strong

4

and legitimate interest in resolving this matter. GWFS is headquartered in Arlington, Virginia, which is within the jurisdiction of the E.D. of Virginia. GWFS is a part of this community and employs members of the population. GWFS applies the same employment policies and procedures in Illinois and Virginia. Thus, the residents of the E.D. of Virginia have an interest in the resolution of this litigation. Moreover, simply by employing residents of the area, the E.D. of Virginia has an interest in this matter. Accordingly, in addition to the valid forum-selection clause, the public interest factors weigh in favor of transfer to the E.D. of Virginia.

WHEREFORE, Defendant, GARDAWORLD FEDERAL SERVICES, LLC., respectfully requests this Court transfer venue from the U.S. District Court for the Northern District of Illinois to the U.S. District Court for the Eastern District of Virginia pursuant to 28 U.S.C.S. § 1404(a).

Respectfully submitted,

**SCHUELER, DALLAVO & CASIERI**

By: */s/ Katherine A. Rodosky*

An Attorney for Defendant

Katherine A. Rodosky
Schueler, Dallavo & Casieri
525 W. Monroe Street
Suite 1530
Chicago, IL 60661
krodosky@sdc-atty.com
Attorney No. 6225948

## CERTIFICATE OF SERVICE

Katherine A. Rodosky, an attorney in this cause, certifies that the foregoing Motion to Transfer Venue was served on all parties of record by the Court's Electronic Case Filing System on this June 20, 2025.

/s/ *Katherine A. Rodosky*

# **Exhibit A**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA PUENTE, | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:25-cv-04570** |
| | ) | |
| v. | ) | |
| | ) | |
| GARDAWORLD FEDERAL SERVICES, | ) | |
| LLC, | ) | **Jury Trial Demanded** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Christina Puente, ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against GardaWorld Federal Services, LLC ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1.  This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), seeking redress for Defendants sex-based discrimination, and retaliation under Title VII.

### JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3.  Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

### ADMINISTRATIVE PREREQUISITES

**Exhibit A**

4.      All conditions precedent have been fulfilled or been complied with.

5.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6.      Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7.      This Complaint has been filed within ninety (90) days of his receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8.      At all times material to the allegations of this Complaint, Plaintiff, Christina Puente, resides in Randall County, Texas.

9.      At all times material to the allegations in this Complaint, Defendant, GardaWorld Federal Services, LLC is a limited liability company doing business in Chicago, Illinois with its headquarters located at 1760 Old Meadow Road, Suite 400, McLean, VA 22102, and its registered agent at 801 Adlai Stevenson Drive, Springfield, IL 62703.

10.     Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11.     During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12.     Plaintiff was hired by Defendant in or around January 2024 as a Assistant Site Supervisor and was later promoted to Site Captain, a role she remained in until her unlawful termination on or around September 25, 2024.

Exhibit A

13.    By way of a contract with the Illinois Department of Human Services, Defendant provides services to at least three shelters in Chicago, Illinois.

14.    Plaintiff worked at the Chicago, Illinois locations as part of her employment with Defendant.

15.    Since at least March 2024 through September 25, 2024, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has been subjected to a hostile work environment on the basis of sex, violating Title VII.

16.    Additionally, Defendant retaliated against Plaintiff by terminating her employment for engaging in protected activity.

17.    Plaintiff is female and is a member of a protected class because of her sex whom Defendant subjected to different terms and conditions of employment than others not within her protected class.

18.    During Plaintiff's interview, Walter (LNU) conducted it, and Plaintiff was transparent about having two pending EEOC charges against her former employers, including the Chicago Department of Family and Support Services (DFSS), a client of Defendant.

19.    During the interview, Plaintiff notified Walter that she had reported her former employers to the EEOC for sex-based harassment, discrimination and retaliation.

20.    Thus, at all times material, Defendant knew that Plaintiff had engaged in protected activity by reporting her former employer to the EEOC.

21.    After the interview, Plaintiff was hired and later promoted to Site Supervisor.

22.    However, instead of being promoted to Program Manager, Plaintiff was given the title of Site Captain because the role of Program Manager would have required Plaintiff to work closely with DFSS.

3

**Exhibit A**

23.     In effect, Defendant refused to promote Plaintiff despite her ample qualifications because she had engaged in protected activity and filed a claim with the EEOC against DFFS.

24.     In or around March 2024, DFSS filed a complaint against Plaintiff, claiming that she was disrespectful and rude.

25.     Walter was present and affirmed that DFSS was lying.

26.     Plaintiff reminded Walter that DFSS had just received an EEOC charge against them, which is why they were retaliating against Plaintiff.

27.     Walter responded by saying, "They made it very clear they don't want you here. Just lay low."

28.     Around the same time, despite Walter acknowledging that the complaints against Plaintiff were fabricated, HR nevertheless issued a warning to Plaintiff.

29.     In or around September 2024, leadership attended dinners and cocktail events.

30.     Two site supervisors under Plaintiff's supervision purchased a sign that read "Fuck NewLife"—a partner of the company—and posted it on social media.

31.     When Plaintiff became aware of this, she immediately notified Walter to give him a heads-up and informed him that Miguel Lopez, one of the supervisors, had posted it online.

32.     Hours later, on or about September 21, 2024, Plaintiff was placed on administrative leave.

33.     Despite these site supervisors also being subordinates of Lopez (male), he faced no disciplinary action for the incident, demonstrating that Plaintiff was treated differently for similar conduct.

34.     Shortly thereafter, Walter told Plaintiff, "It's not a good look for DFSS. We don't know if the state is going to extend us. I don't know if Garda is going to keep you on."

4

Exhibit A

35.    On or about September 25, 2024, Plaintiff was subsequently placed on the do-not-return list, and terminated.

36.    Plaintiff met or exceed Defendant's performance expectations during the entire duration of their employment.

37.    Plaintiff was unlawfully terminated because of her sex, (female) on September 25, 2024.

38.    Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

39.    Plaintiff opposed the sex-based discrimination to Defendant.

40.    Plaintiff was targeted for termination because of their sex.

41.    Plaintiff suffered multiple adverse employment actions including, but not limited to being terminated.

42.    There is a basis for employer liability for the sex-based discrimination that Plaintiff was subjected to.

43.    Plaintiff can show that their engaged in statutorily protected activity –a necessary component of their retaliation claim- because Plaintiff lodged complaints directly to their manager about the discrimination.

44.    The purported justification for termination was pretext for unlawful discrimination and retaliation.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Sex-Based Discrimination)**

45.    Plaintiff repeats and re-alleges paragraphs 1-44 as if fully stated herein.

46.    By virtue of the conduct alleged herein, Defendant intentionally discriminated

Exhibit A

against Plaintiff based on Plaintiff's sex, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

47.    Plaintiff met or exceeded performance expectations.

48.    Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

49.    Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

50.    Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's sex.

51.    Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

52.    As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

### COUNT II
**Violation of Title VII of The Civil Rights Act of 1964
(Retaliation)**

53.    Plaintiff repeats and re-alleges paragraphs 1-44 as if fully stated herein.

54.    Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq.*

55.    During Plaintiff's employment with Defendant, Plaintiff disclosed that she engaged in protected activity in reporting sex-based harassment, discrimination, and retaliation to the EEOC.

56.    As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

6

Exhibit A

57.    In response to Plaintiff's complaint, Defendant retaliated against Plaintiff by refusing to promote her and ultimately terminating her employment.

58.    Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

59.    By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the sex-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

60.    Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

61.    As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

    a.    Back pay with interest;

    b.    Payment of interest on all back pay recoverable;

    c.    Compensatory and punitive damages;

    d.    Reasonable attorneys' fees and costs;

    e.    Award pre-judgment interest if applicable; and

    f.    Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Exhibit A

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 28th day of April 2025.

/s/ *Travis P. Lampert*

**TRAVIS P. LAMPERT, ESQ.**
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 581-5456
Fax (630) 575-8188
tlampert@sulaimanlaw.com
*Attorney for Plaintiff*

8

**Exhibit A**

# Exhibit A

EEOC No. 440-2024-12597 | FEPA No.

# CHARGE OF DISCRIMINATION

Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
| --- | --- |
| EEOC | 440-2024-12597 |
| Illinois Department Of Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Christina Puente

Phone No.:

Year of Birth:

Mailing Address:

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: GardaWorld Federal Services

No. Employees, Members: 201 - 500 Employees

Phone No.:

Mailing Address: 1700 n Moore St

ARLINGTON, VA 22209, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Retaliation

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 03/01/2024

Latest: 09/30/2024

THE PARTICULARS ARE:

I was hired by Respondent in or around January 2024. My most recent position was Site Captain. I engaged in protected activity. Subsequently, I was disciplined, denied hiring, and placed on administrative leave. In or around September 2024, I was discharged.

I believe I have been discriminated against in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1990, as amended.

**Exhibit A**

EEOC No. 440-2024-12597 | FEPA No.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Christina Puente
03/25/2025
_____
Charging Party Signature & Date

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

_____
Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name  _____

**Exhibit A**

## CP ENCLOSURE WITH EEOC FORM 5 (06/24)

### PRIVACY ACT STATEMENT

Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (06/24).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so *within 15 days* of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA, Section 207(f) of GINA, and 42 USC 2000gg-2(f)(1) of the PWFA it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**Exhibit A**

# **Exhibit B**

Exhibit A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/11/2025

**To:** Christina Puente
c/o Mohammad Badwan
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Charge No: 440-2024-12597
EEOC Representative and email:     KIMBERLY ENGRAM
Investigator
kimberly.engram@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2024-12597.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
04/11/2025
Amrith Kaur Aakre
District Director

**Exhibit A**

**Cc:**
Virginia Cleveland
GardaWolrld Federal Services, LLC
1700 North Moore Street Suite 1875
Arlington, VA 22209

1700 n Moore St
ARLINGTON, VA 22209

Mohammad Badwan
2500 South Highland Avenue, Suite 200
Lombard, IL 60148

Please retain this notice for your records.

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2024-12597 to the

<span style="color:red">**Exhibit A**</span>

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2024-12597 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

**Exhibit A**

# Exhibit B

**GARDAWORLD**
**Federal Services**

<u>**EMPLOYEE COVENANTS AGREEMENT**</u>

In consideration of my employment by **GardaWorld Federal Services, LLC** (collectively referred to herein as "GWFS") and the compensation to be paid to me by GWFS, I ("**Employee**") hereby enter into this **Employee Covenants Agreement** (the "**Agreement**") and agree to the following:

**1.**     <u>**Confidential Information.**</u>    During my employment with GWFS, I will have access to Confidential Information (defined below) belonging to GWFS. During and after my employment with GWFS, I will maintain all GWFS Confidential Information in the strictest confidence. I will access, use, and disclose GWFS Confidential Information only as authorized by GWFS and as needed for the performance of my duties for GWFS. I may also, through the course of my employment, receive access to Confidential Information belonging to third parties. I will access, use, and disclose such third-party Confidential Information subject to the same limitations in this Paragraph and agree that I may also have additional limitations on the authorized use of third-party Confidential Information which, if disclosed to me, I agree to abide by. I will immediately report any unauthorized receipt, use, or disclosure of GWFS or third-party Confidential Information to the GWFS Chief Legal Officer/General Counsel.

In the event I am ordered to disclose any Confidential Information, whether in a legal or regulatory proceeding or otherwise, such disclosure shall be limited to the narrowest disclosure so required, and, except to the extent prohibited by law, I will provide at least two (2) weeks' written notice to GWFS, if practicable, of the basis for any such compelled disclosure of Confidential Information and will reasonably cooperate with GWFS in limiting disclosure and obtaining suitable confidentiality protections.

Notwithstanding the foregoing, I understand I will not be held criminally or civilly liable under any federal or state Trade Secret law for the disclosure of a Trade Secret that: (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

**2.**     <u>**Export Information.**</u>    I will comply with the rules and guidelines of GWFS pertaining to Federal Export Information (as defined below). I will not export or release for export any GWFS products, software, technology, or technical data without first confirming that GWFS has obtained any necessary export licenses. I understand that an "export" includes not only transmitting GWFS products and/or data outside the United States, but also conveying any information or assistance orally, in writing or by visual inspection, relating to any products, software, technology or technical data, to a foreign national, whether within or outside the United States.

**3.**     <u>**Intellectual Property.**</u>    I agree that all Intellectual Property that I make, conceive, reduce to practice, or develop (in whole or in part, either alone or jointly with others) during my employment shall be the sole property of GWFS to the maximum extent permitted by law, and to the extent permitted by law, shall be "works made for hire." GWFS shall be the sole owner of patents, copyrights, Trade Secret rights, and other Intellectual Property or other rights in connection therewith. I hereby assign to GWFS any rights I may have or acquire in such Intellectual Property. I agree to perform, during and after my employment, all acts deemed necessary or desirable by GWFS to permit and assist it in obtaining and enforcing patents, copyrights, Trade Secret rights, or other rights on such Intellectual Property and/or any other Intellectual Property I have or may at any time assign to GWFS in any and all countries. Such acts may include, but are not limited to, execution of documents and assistance or cooperation in legal proceedings. With respect to any and all maters arising out of relating to my employment with GWFS, I hereby irrevocably designate and appoint GWFS and its duly authorized officers and agents, as my agents and attorneys-in-fact to act for and in my behalf and

<span style="color:red">**Exhibit B**</span>

instead of me, to execute and file any applications or related filings and do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights, Trade Secret rights or other rights thereon with the same legal force and effect as if executed by me.

**3.1**      I will maintain adequate and current written records of all Intellectual Property in the form of notes, sketches, drawings, or reports.  These records shall remain the property of, and available to, GWFS at all times, and I agree promptly to disclose to GWFS all such Intellectual Property  and records.  I also agree to vest title in Intellectual Property to GWFS, its successors, assigns, or nominees.

**3.2**      I will not use any Intellectual Property belonging to GWFS, as explained herein, without the prior written consent of GWFS.  I also agree that I will not directly or indirectly publish, communicate, divulge, or disclose Intellectual Property belonging to GWFS to any person not specifically authorized in writing by GWFS, nor apply for a patent, copyright, trademark, or mask work registration on any such Intellectual Property and related information during the period of my employment or at any time subsequent thereto.

**4.**      **GWFS Computer Network.**  During my employment with GWFS, I will be given access to the GWFS computer network (the "Network"), which is the exclusive property of GWFS, to facilitate and support the performance of my job. I acknowledge and agree that: (a) the Network includes all computers, equipment, devices, and storage devices connected in any way to this Network and all content therein; (b) access to the Network is only for authorized users and for authorized company purposes; and (c) unauthorized or improper use of the Network may result in disciplinary action, up to and including termination.  I understand and agree that I have no expectation of privacy in any information passing through or stored on the Network, and that communications and data passing through or stored on the Network are monitored and may be intercepted, searched, disclosed, or used for any lawful purpose.

**5.**      **Non-Solicitation of Employees.**  During the Restricted Period, I will not, either on my own behalf or on behalf of a third party, directly or indirectly, recruit or hire, any GWFS Employee for the purpose of terminating their GWFS employment to provide Competitive Services substantially similar to the Competitive Services the GWFS Employee provided to GWFS or its customers.

**6.**      **Non-Solicitation of Customers.**  During the Restricted Period, I will not, directly or indirectly, on my own behalf or on behalf of a third-party, solicit, or participate in the solicitation of, GWFS Customers.  This prohibition only applies to solicitations: (1) for the GWFS Customer to cease doing business with GWFS; (2) for the GWFS Customer to limit substantially the business they do with GWFS; (3) to provide Competitive Services substantially similar to the Competitive Services GWFS provided to the GWFS Customer; (4) to provide Competitive Services using Confidential Information learned while employed at GWFS; or (5) to provide extension, follow-on, or re-competition efforts for contracts, projects, or programs on which I worked while employed by GWFS.

**7.**      **Reasonable Restriction.**  I acknowledge that the restrictions contained in this Agreement are reasonable and shall not prevent me from earning a living in the event of, and after, the termination of my employment with GWFS, for whatever reason.

**8.**      **Severability.**  Each of the provisions of this Agreement shall be deemed separate and severable each from  the other.   If any provision or portion of this Agreement shall be determined to be invalid or unenforceable for any reason by final judgment of a court of competent jurisdiction, the remaining provisions or portions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law.

**Exhibit B**

**GARDAWORLD**
**Federal Services**

**9.    At-Will Employment.**   I understand that this Agreement does not constitute an employment contract. I understand that my employment relationship with GWFS is at-will, which means that my employment may be terminated by me or GWFS, with or without cause and with or without advance notice.

**10.    Termination.**   Upon termination of my employment, I will immediately return to GWFS all GWFS property, including, without limitation, all GWFS Confidential Information and all information, memoranda, notes, records, drawings, manuals, files, all copies of each or other documents concerning, containing, or related to GWFS Intellectual Property.

**11.    Choice of Law.** I acknowledge that GWFS is headquartered in the Commonwealth of Virginia, and I agree that this Agreement and all matters relating to my employment with GWFS shall be construed and governed exclusively by the laws of the Commonwealth of Virginia, excluding any conflicts or choice of law rule or principle that might otherwise refer constructions or interpretation of this Agreement to the substantive law of another jurisdiction. Notwithstanding the foregoing, if Employee works primarily in California, then this paragraph shall not apply.

**12.    Choice of Venue.** Any action arising from this Agreement or any aspect of my employment or termination of my employment, including enforcement of an arbitrator's decision rendered pursuant to this Agreement, must be filed in the U.S. District Court for the Eastern District of Virginia or the Circuit Court of Fairfax County, Virginia. I expressly submit to the exercise of personal jurisdiction by such courts and waive any objections to venue in those courts. Notwithstanding the foregoing, if Employee works primarily in California, then this paragraph shall not apply.

**13.    Dispute Resolution.** In the event of any Dispute arising from this Agreement or any aspect of my employment or termination thereof ("Dispute"), I acknowledge and agree that I am required to comply with GWFS's Dispute resolution procedures as follows:

**15.1**    Before bringing any action in court against GWFS or its directors, employees, or agents arising from or related to a Dispute, I must attempt to resolve the Dispute through at least four (4) hours of discussions with GWFS or, at GWFS's election, mediation conducted by a bona fide mediation provider in or near GWFS's headquarters in the United States. If GWFS elects mediation, it will pay the costs and fees of the mediation provider. I agree and acknowledge that compliance with the procedure described in this Paragraph 15.1 is a condition precedent to bringing any action in court against GWFS or its directors, employees, or agents arising from or related to a Dispute.

**15.2**    If either GWFS or I bring an action in court arising from or relating to a Dispute, the following additional procedures apply:  (i) I HEREBY WAIVE MY RIGHT TO TRIAL BY JURY OF ANY DISPUTE; (ii) I HEREBY WAIVE ANY RIGHT OR ABILITY TO BRING A MULTI-PARTY, CLASS OR COLLECTIVE ACTION OR TO BE A CLASS OR COLLECTIVE ACTION REPRESENTATIVE IN ANY ACTION ARISING FROM OR RELATING TO A DISPUTE OR TO OTHERWISE PARTICIPATE IN SUCH PUTATIVE OR CERTIFIED CLASS, COLLECTIVE OR MULTI-PARTY ACTION, UNLESS ALL PARTIES TO THE DISPUTE CONSENT IN WRITING; and (iii) GWFS may, at its option exercised within thirty (30) days of service of the complaint in such action, require all or part of the Dispute to be arbitrated, except that GWFS shall not have the right to require arbitration of a Dispute to the extent it relates to claims under Title VII of the Civil Rights Act of 1964 or any tort arising out of or related to sexual assault or harassment. Nothing in this Section 15, or in this Agreement, shall be construed as prohibiting me from filing a Charge of Discrimination with the Equal Employment Opportunity Commission or any other government agency.

**15.3**    I understand and agree that any arbitration conducted in accordance with this Section 15 shall be

conducted by a single arbitrator at a location in Washington, D.C. or elsewhere within fifteen (15) miles of GWFS's headquarters and administered by the American Arbitration Association or JAMS, Inc., as selected by GWFS, in accordance with their respective employment arbitration rules. GWFS will pay for the cost of arbitration except that the employee will pay an amount not to exceed the filing fee the employee would pay if filing a claim in the state or federal court. Any such arbitration will be arbitrated solely on an individual basis. No Dispute between GWFS and me may be consolidated or joined in arbitration with a Dispute between any other employee and GWFS, nor may I seek to bring my Dispute jointly with other employees or on behalf of other employees as a class or collective action or to participate in arbitration jointly with other employees or as a member of a class or collective action. All evidence and other information presented during the arbitration proceedings shall be confidential and not disclosed except as necessary to enforce the arbitration award. The arbitrator's decision will be final, binding, and enforceable by any court of competent jurisdiction. This Section 15.3 does not apply to a claim for which a pre-Dispute arbitration provision is prohibited by law. Any Dispute concerning the interpretation or enforceability of this Agreement or the arbitration provisions herein are included in the scope of subjects to be resolved by arbitration.

**16.** <u>**Injunctive Relief**</u>. I acknowledge and agree that GWFS may suffer immediate and irreparable harm in the event of my actual or threatened breach of one or more of the obligations set forth in this Agreement, and that such harm would be difficult or impossible to estimate or determine. Therefore, in the event of such an actual or threatened breach, I agree that GWFS may seek injunctive relief from a court of competent jurisdiction restraining me from such breach and, if GWFS substantially prevails, awarding GWFS its damages and reasonable attorney's fees and costs incurred, without requiring GWFS to post a bond and without requiring GWFS to pursue the Dispute resolution procedures describes in Section 15 of this Agreement.

**17.** <u>**Successors and Assigns**</u>. I acknowledge and agree that this Agreement (a) shall be binding upon and inure to the benefit of me, my heirs, executors, administrators, legal representatives, successors, and assigns and (b) shall be binding upon, and shall inure to the benefit of, GWFS, and its successors and assigns to whom GWFS may freely assign this Agreement. I understand and agree that I may not assign or transfer any rights or obligations under this Agreement, but GWFS may assign or transfer any rights or obligations under this Agreement.

**18.** <u>**Definitions**</u>. For purposes of this Agreement, the following definitions apply.

**18.1** "*Competitive Services*" means services that are substantially similar to the following services GWFS offers to its customers: (1) security services, such as static security, mobile security, convoy protection, close protection, explosive detection dogs, airport security screening, and/or executive and travel protection; (2) risk management, crisis management, and/or emergency response services; (3) security and risk management training or consulting services; (4) logistics and life support services for clients operating in high-risk or high-threat environments; (5) medical services, such as emergency medical support, staff augmentation, or full clinic and field hospital operations; and (6) services GWFS publicly advertises as offering within the most recent 12 months of my employment with GWFS.

**18.2** "*Confidential Information*" means Trade Secrets and any other any data or information, whether or not in writing, that is commercially valuable to GWFS and is not generally known by the public. Confidential Information may include, without limitation, the names, contact persons, habits or practices of employees, customers, clients or vendors of GWFS or a third party; the business, financial and marketing strategies, forecasts, methods, practices and standards of GWFS or a third party; and financial and planning data, computer reports, compilations of business and financial data, studies, price lists, pricing policies, manuals, salary information, future business plans and other confidential business or financial information concerning the business of GWFS or a third party or their manner of operation. Confidential

**GARDAWORLD**
**Federal Services**

Information also includes any information or data described above which GWFS or a third party obtains from another party and which GWFS or a third party treats as proprietary or designates as Confidential Information whether or not owned or developed by GWFS or the third party.

**18.3** "*Federal Export Information*" means information that is subject to control by the United States export control laws or regulations, including the International Traffic in Arms Regulations ("ITAR") of the United States Department of State, the Export Administration Regulations ("EAR") of the United States Department of Commerce and Patent Secrecy Orders issued by the United States Patent and Trademark Office. Federal Export Information may include, but is not limited to, technical information required for design, development, production, manufacture, assembly, operations, repair, testing, maintenance or modification of a product or provided service controlled by a United States government agency.

**18.4** "*GWFS Customer*" means: (1) any commercial entity; or (2) any division, unit, or office of any federal, state, or foreign governmental agency. However, such customers are limited to those: (1) to whom I provided Competitive Services during my tenure with the Company; or (2) about whom I learned Confidential Information regarding GWFS capture strategies through my role as a GWFS Employee.

**18.5** "*GWFS Employee*" means anyone who is a current employee of GWFS or a former employee with whom I had professional contact to provide Competitive Services for GWFS in the twelve (12) months preceding the act of recruitment or hiring.

**18.6** "*Intellectual Property*" includes all improvements, inventions, formulas, ideas, works of authorship, processes, computer programs and software, software designs and documentation, algorithms, techniques, schematics, know-how data, whether or not patentable, made or conceived or reduced to practice or developed by me, either alone or jointly with others: (a) with the use of time, materials, or facilities of GWFS; (b) resulting from or suggested by my work for GWFS; or (c) in any way pertaining to any subject matter related to the existing or contemplated business, products or services of GWFS or any other entity in the same field of business or to which I may be exposed to during my course of employment.

**18.7** "*Restricted Area*" means: (1) for employees who work on a project site within the Continental United States: within 25 miles of any location within the Continental United States to which I am assigned for at least 30 days within the most recent 12 months of my employment; (2) for employees who work remotely from home: within 25 miles of any office to which I reported within the most recent 12 months of my employment; and (3) for employees who work primarily outside of the Continental United States: within 50 miles of any location outside of the Continental United States to which I am assigned for at least 30 days within the most recent 12 months of my employment.

**18.8** "*Restricted Period*" shall mean the term of my employment and the twelve (12) month period thereafter.

**18.9** "*Trade Secret*" means information, including a formula, pattern, compilation, program, data, device, method, technique or process that (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**19.** **Construction.** Having had the opportunity to obtain the advice of legal counsel to review and comment upon this Agreement, I agree that this Agreement shall be construed as if the parties jointly prepared it so that any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

**Exhibit B**

**20.** **Adequacy of Consideration.** The parties further acknowledge the adequacy of the additional consideration provided herein by each to the other, that this is a legally binding document, and that they intend to be bound by and faithful to its terms.

**21.** **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**22.** **Counterparts and Electronic Copies.** This Agreement may be executed in counterparts or by copies transmitted electronically, all of which have the same force and effect as the original.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Exhibit B

**THIS AGREEMENT CONTAINS A WAIVER OF JURY RIGHTS.**

**I HAVE READ AND UNDERSTAND THE ABOVE. I AM ENTERING THIS AGREEMENT VOLUNTARILY, WITHOUT DURESS, AND I HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT WITH LEGAL COUNSEL OF MY CHOICE PRIOR TO SIGNING.**

| | | |
|---|---|---|
| Tina Puente | *Tina Puente (Jan 2, 2024 11:34 CST)* | Jan 2, 2024 |
| Employee Printed Name | Employee Signature | Date |

| | | |
|---|---|---|
| Virginia Cleveland | *Virginia Cleveland (Jan 2, 2024 12:09 EST)* | Jan 2, 2024 |
| GWFS Representative Name | GWFS Representative Signature | Date |

Director of HR
GWFS Representative Title

**Exhibit B**

# **Exhibit C**

## U.S. District Court — Judicial Caseload Profile

**VIRGINIA EASTERN**

| | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|
| | | Mar 31 2020 | Mar 31 2021 | Mar 31 2022 | Mar 31 2023 | Mar 31 2024 | Mar 31 2025 | U.S. | Circuit |
| **Overall Caseload Statistics** | Filings [1] | 4,500 | 4,357 | 4,151 | 4,230 | 4,764 | 5,198 | | |
| | Terminations | 4,339 | 4,081 | 4,623 | 4,190 | 4,484 | 4,822 | | |
| | Pending | 3,444 | 3,970 | 3,545 | 3,609 | 3,896 | 4,298 | | |
| | Percent Change in Total Filings Current Year Over Earlier Year | 15.5 | 19.3 | 25.2 | 22.9 | 9.1 | | 19 | 1 |
| | Number of Judgeships | 11 | 11 | 11 | 11 | 11 | 11 | | |
| | Vacant Judgeship Months [2] | 16.8 | 16.7 | 20.8 | 16.0 | 12.0 | 0.0 | | |
| **Actions per Judgeship** | Filings — Total | 409 | 396 | 377 | 385 | 433 | 473 | 43 | 3 |
| | Filings — Civil | 295 | 311 | 269 | 277 | 337 | 375 | 33 | 4 |
| | Filings — Criminal Felony | 75 | 58 | 70 | 69 | 62 | 66 | 46 | 5 |
| | Filings — Supervised Release Hearings | 39 | 28 | 38 | 39 | 34 | 32 | 49 | 6 |
| | Pending Cases [2] | 313 | 361 | 322 | 328 | 354 | 391 | 60 | 5 |
| | Weighted Filings [2] | 360 | 360 | 358 | 350 | 392 | 418 | 47 | 3 |
| | Terminations | 394 | 371 | 420 | 381 | 408 | 438 | 50 | 4 |
| | Trials Completed | 21 | 12 | 18 | 18 | 17 | 17 | 30 | 5 |
| **Median Time (Months)** | From Filing to Disposition — Criminal Felony | 5.6 | 8.6 | 8.6 | 7.6 | 7.9 | 7.9 | 9 | 1 |
| | From Filing to Disposition — Civil [2] | 5.7 | 6.3 | 6.9 | 6.7 | 6.0 | 5.3 | 6 | 1 |
| | From Filing to Trial [2] (Civil Only) | 11.6 | - | 18.1 | 23.2 | 18.2 | 11.9 | 1 | 1 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | 86 / 3.6 | 99 / 3.4 | 190 / 7.8 | 365 / 14.7 | 341 / 12.3 | 343 / 10.9 | 55 | 7 |
| | Average Number of Felony Defendants Filed per Case | 1.3 | 1.3 | 1.3 | 1.2 | 1.3 | 1.2 | | |
| | Jurors — Avg. Present for Jury Selection | 54.6 | 58.0 | 62.6 | 64.6 | 62.1 | 52.4 | | |
| | Jurors — Percent Not Selected or Challenged | 42.6 | 51.6 | 49.8 | 43.7 | 45.3 | 33.5 | | |

### 2025 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense

| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 4,121 | 110 | 18 | 866 | 5 | 51 | 154 | 370 | 281 | 239 | 586 | 4 | 1,437 |
| Criminal [1] | 723 | 4 | 178 | 67 | 141 | 144 | 36 | 78 | 3 | 18 | 1 | 13 | 40 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

**Exhibit C**

## U.S. District Court — Judicial Caseload Profile

**ILLINOIS NORTHERN**

| | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|
| | | Mar 31 2020 | Mar 31 2021 | Mar 31 2022 | Mar 31 2023 | Mar 31 2024 | Mar 31 2025 | U.S. | Circuit |
| **Overall Caseload Statistics** | Filings [1] | 10,164 | 9,081 | 8,169 | 8,897 | 18,743 | 15,483 | | |
| | Terminations | 11,363 | 11,733 | 8,886 | 8,880 | 9,481 | 13,708 | | |
| | Pending | 15,472 | 12,804 | 12,039 | 12,068 | 21,317 | 23,073 | | |
| | Percent Change in Total Filings Current Year Over Earlier Year | 52.3 | 70.5 | 89.5 | 74.0 | -17.4 | | 86 | 6 |
| | Number of Judgeships | 22 | 22 | 22 | 22 | 22 | 22 | | |
| | Vacant Judgeship Months [2] | 42.1 | 20.4 | 17.7 | 15.5 | 13.1 | 14.4 | | |
| **Actions per Judgeship** | Filings Total | 462 | 413 | 371 | 404 | 852 | 704 | 14 | 2 |
| | Filings Civil | 414 | 364 | 332 | 372 | 821 | 670 | 9 | 2 |
| | Filings Criminal Felony | 37 | 38 | 27 | 23 | 21 | 22 | 92 | 7 |
| | Filings Supervised Release Hearings | 12 | 10 | 12 | 10 | 9 | 11 | 84 | 6 |
| | Pending Cases [2] | 703 | 582 | 547 | 549 | 969 | 1,049 | 9 | 3 |
| | Weighted Filings [2] | 439 | 410 | 371 | 401 | 751 | 714 | 6 | 1 |
| | Terminations | 517 | 533 | 404 | 404 | 431 | 623 | 17 | 2 |
| | Trials Completed | 9 | 4 | 8 | 9 | 10 | 9 | 76 | 6 |
| **Median Time (Months)** | From Filing to Disposition Criminal Felony | 15.0 | 22.1 | 23.1 | 25.6 | 31.7 | 31.3 | 94 | 7 |
| | From Filing to Disposition Civil [2] | 9.8 | 16.3 | 7.4 | 6.7 | 5.6 | 7.6 | 38 | 3 |
| | From Filing to Trial [2] (Civil Only) | 39.0 | 35.5 | 53.8 | 53.5 | 55.4 | 58.6 | 48 | 5 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | 4,528 / 34.0 | 1,642 / 15.8 | 2,031 / 20.9 | 2,353 / 23.7 | 2,460 / 12.7 | 2,389 / 11.2 | 58 | 5 |
| | Average Number of Felony Defendants Filed per Case | 1.4 | 1.3 | 1.4 | 1.3 | 1.4 | 1.3 | | |
| | Jurors Avg. Present for Jury Selection | 51.1 | 38.4 | 103.2 | 96.3 | 71.6 | 62.0 | | |
| | Jurors Percent Not Selected or Challenged | 46.2 | 17.9 | 70.7 | 65.0 | 53.5 | 47.5 | | |

| 2025 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 14,744 | 420 | 3,968 | 903 | 11 | 74 | 643 | 978 | 1,227 | 2,551 | 2,048 | 125 | 1,796 |
| Criminal [1] | 492 | 6 | 150 | 34 | 97 | 70 | 51 | 22 | - | 7 | 5 | 10 | 40 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

**Exhibit C**